NOT FOR PUBLICATION                                    [Docket No. 12]

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| STEVEN RICCI,<br><br>            Plaintiff,<br><br>     v.<br><br>SEARS HOLDING CORPORATION, et al.,<br><br>            Defendants. | Civil No. 14-3136 RMB/JS<br><br>**OPINION** |

APPEARANCES:

Daniel M. Kurkowski
Kurkowski Law LLC
1252 Route 109 South
Cape May, NJ 08204
     Attorneys for Plaintiff

Todd Alan Ewan
Christin Choi
Fisher & Phillips LLP
150 N. Radnor Chester Road
Radnor, PA 19087
     Attorneys for Defendants

**BUMB**, United States District Judge:

     This matter comes before the Court upon a Motion by

Defendants, Sears Holding Corporation and Kmart Corporation

("Defendants") to Compel Arbitration and Dismiss Plaintiff's

Complaint. For the reasons set forth below, Defendant's motion shall be granted.

I. **Background:**

Per his Complaint filed in New Jersey Superior Court, Plaintiff Steven Ricci ("Plaintiff") was hired by the Defendants in November of 2007 to work as a "Hardline Merchandiser" in the Defendants' Somers Point Kmart store. Pl.'s Compl. at ¶ 3.  On July 18, 2013, Plaintiff was performing work in the warehouse when the metal shelves he was loading "began to cascade over him" causing Plaintiff to be injured. Id. at ¶¶ 7-9. After the injury, Plaintiff had difficulty performing his duties and returned to work with restrictions ordered by his physician. Id. at ¶¶ 13-15. Plaintiff has asserted claims against the Defendants under the New Jersey Law Against Discrimination, N.J.S.A., 10:5-1 et seq., stating that they "have discriminated against Plaintiff for his need for a reasonable accommodation for a work-place injury and retaliated against him for his disclosures and protests of being treated differently in respect to the amount of hours he was being assigned to work." Id. at ¶ 28. The Defendants removed the Plaintiff's Complaint to this Court on the basis of diversity jurisdiction. [Docket No. 1].

Pursuant to the instant motion, the Defendants contend that on April 27, 2012, Plaintiff agreed to abide by the terms of a binding Arbitration Policy/Agreement (the "Agreement"), which constitutes a waiver of his right to bring the current action in a court of law and, instead, requires arbitration of his claims. Defs.' Br. at 4.  The Agreement provides, in relevant part:

> Under this Agreement, and subject to certain exceptions specified within the Agreement, all employment-related disputes between you ("Associate") and Company that are not resolved informally shall be resolved by binding arbitration in accordance with the terms set forth below. This Agreement applies equally to disputes related to Associate's employment raised by either Associate or by Company.
>
> **Accordingly, Associate should read this Agreement carefully, as it provides that virtually any dispute related to Associate's employment must be resolved only through binding arbitration. Arbitration replaces the right of both parties to go to court, including the right to have a jury decide the parties' claims.**
>
> * * *
>
> **If Associate does not wish to be bound by the Agreement, Associate must opt out by following the steps outlined in this Agreement within 30 days of receipt of this Agreement. Failure to opt out within the 30-day period will demonstrate Associate's intention to be bound by this Agreement and Associate's agreement to arbitrate all disputes arising out of or related to Associate's employment as set forth below.**

Kaselitz Decl., Exhibit 1 (emphases in original).  By its terms, the Agreement applies to employment discrimination disputes under federal and "any and all state statutes."  Id.

3

**II. Standard:**

Motions to compel arbitration are reviewed under the standard for summary judgment found in Federal Rule of Civil Procedure 56(a). Flintkote Company v. Aviva, 769 F.3d 215, 219 (3d Cir. 2014). Under this standard, "the motion should be granted where 'there is no genuine dispute as to any material fact and the movement is entitled to judgment as a matter of law.'" Id. (quoting Fed. R. Civ. P. 56(a).) In applying this standard, this Court must view the facts and draw inferences in the light most favorable to the nonmoving party "because the district court's order compelling arbitration is in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate." Century Idem. Co. v. Certain Underwriters at Lloyd's London, 584 F.3d 513, 528 (3d Cir. 2009)(quotations and citations omitted).

**III. Analysis**

A. Motion to Compel

In enacting the Federal Arbitration Act ("FAA"), "Congress expressed a strong federal policy in favor of resolving disputes through arbitration.'" Flintkote, 769 F.3d at 219 (citing Century Idem., 584 F.3d at 522). That said, the Third Circuit has

4

recognized that arbitration is "strictly a matter of contract" and "if a party has not agreed to arbitrate, the courts have no authority to mandate that he do so." Id. at 220 (quoting Bel-Ray Co., Inc. v. Chemrite (Pty) Ltd., 181 F.3d 435, 444 (3d Cir. 1999)). In deciding whether a party may be compelled to arbitrate under the FAA, this Court must "first consider '(1) whether there is a valid agreement to arbitrate between the parties, and, if so, (2) whether the merits-based dispute in question falls within the scope of a valid agreement.'" Id. (quoting Century Indem., 584 F.3d at 527). Because state law contract principles apply in determining whether parties to an action have agreed to arbitrate, this Court will apply New Jersey law. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995).

As stated recently by the New Jersey Supreme Court, "[a]n agreement to arbitrate, like any other contract, must be the product of mutual assent, as determined under customary principles of contract law.'" Atalese v. U.S. Legal Serv. Group., 219 N.J. 430, 442 (2014)(quoting NAACP of Camden County East v. Foulke Mgmt., 421 N.J. Super. 404, 424 (App. Div. 2011)). Mutual assent "requires that the parties have an understanding of the terms to which they have agreed." Id. Finally, "because

5

arbitration involves a waiver of the right to pursue a case in a judicial forum, 'courts take particular care in assuring the knowing assent of both parties to arbitrate, and a clear mutual understanding of the ramifications of that assent.'" Id. (citing Foulke Mgmt., 421 N.J. Super. at 424).

The Defendants argue that a valid agreement to arbitrate exists under New Jersey contract law principles.  In support of their argument that there was mutual assent to the Agreement, and that Plaintiff effected a knowing waiver of his right to sue in court, Defendants supply the declaration of Robert Kaselitz, a member of Defendants' Law Department familiar with the policies and practices of the Defendants, including the electronic systems used to maintain its employee personnel records.  Kaselitz Decl. at ¶¶ 1-2.

The Defendants use an online portal called "PeopleSoft" to maintain the records of employees' receipt of employment policies and for online training programs administered by Defendants.  Id. at ¶ 4.  During the relevant time period, employees logged into the "My Personal Information ("MPI") online portal using a unique 'Enterprise ID and Password.'"  Id. at ¶ 7-8.  Employees, including Plaintiff, were required to complete a series of policy acknowledgements in the MPI portal and accessing or printing

6

documents in the system was at no cost to the employee. Id. at ¶¶ 9-10. Employees were required to complete a policy acknowledgement for the Agreement, which could be accessed via a red link on the Policy Acknowledgements page. Id. at ¶ 12. Clicking the link for the Agreement acknowledgment brought the employee to a page containing four additional links labeled:

>    (i)    Arbitration Policy/Agreement (PDF);
>    (ii)   Arbitration Policy/Agreement (Text);
>    (iii)  Opt Out Form; Action is required to protect your legal rights to sue the Company in court and/or to participate in any way in a class action, collective action or representative action; and
>    (iv)   Acknowledgement receipt of Arbitration Policy/Agreement.

Id. at ¶ 13. After reviewing the Agreement and Opt Out Form, employees were asked to acknowledge receipt of the Agreement by clicking on a link. Id. at ¶ 14. After clicking this link, the employee received the following message:

> By clicking below, I acknowledge that I have reviewed and agreed to the terms and conditions set forth in the Arbitration Policy/Agreement. I also understand that I may change my mind and opt out of the Agreement within 30 days of today's date by returning the Arbitration Policy/Agreement Opt Out form located at the end of the Agreement.

Id. at ¶ 15. To submit acknowledgement, employees were required to click the "Yes" button and then click "Submit." Id. at 16. The PeopleSoft system was automatically updated to reflect an

7

employee's receipt and acknowledgment of the Agreement.  Id. at ¶ 17.  Employees had a 30-day window to opt out of the Agreement and could do so by mailing or faxing a completed Opt Out from to the address or number listed on the form.  Id. at ¶¶ 18-19.  If the employee "opted-out," that option was noted on the PeopleSoft system.  Id. at ¶ 20.[1]

The Defendants have provided a "screen capture" of Plaintiff's PeopleSoft page showing that he acknowledged receipt of the Agreement by clicking "Yes" and "Submit" on April 27, 2012.  Id. at ¶ 23.  That same screen capture shows a "Start Date" of February 3, 2012, which reflects the date the Arbitration Policy/Agreement "Course" was created in the PeopleSoft system.  Id. at ¶ 24.  The "End Date" reflects the date that Plaintiff acknowledged receipt of the Agreement – April 27, 2012.  Id.  Plaintiff did not submit a revocation of his acceptance of the Agreement.  Id. at 25.

Based on the above facts, Defendants aver that Plaintiff's review and acceptance of the Agreement is clearly recorded and

---

[1] The Defendants have presented a screen capture for an employee that had opted out of the arbitration program to demonstrate the difference between an employee who has opted out and who has not opted out in the PeopleSoft system.  Kaselitz Decl. Ex. 4.

dated in the Defendants PeopleSoft system. Defs.' Br. at 12. Further, Plaintiff's failure to opt out of the Agreement reflects his intent to be bound by its terms. In sum, the Defendants contend that the evidence submitted, including the screen capture reflects that Plaintiff reviewed and accepted to the Agreement.

The Plaintiff argues that he "had no knowledge of the existence of an arbitration agreement that was allegedly entered into between the parties . . . [because] he never signed any documents purporting to be an [Agreement] and . . . he never knowingly subscribed to this [Agreement] through the MPI course." Pl.'s Br. at 14. Plaintiff argues that Defendants' evidence of the MPI course screen "provide[s] little clarity as to the ultimate issue of Plaintiff's explicit assent and agreement to the terms of the [Agreement] at issue because the date on which Defendants claim Plaintiff ultimately assented to the [Agreement] occurred on February 3, 2012, which is two months prior to the institution of the [Agreement] on April 2, 2012." Id. Finally, Plaintiff takes issue with the fact that the computer system only requires a click of the "Yes" box without a signature or any

9

other indication that the Plaintiff was the employee who assented to the Agreement.² Id.

As an initial matter, this Court notes that Plaintiff has provided no declaration or other sworn statement in support of his argument that he had no knowledge of the Agreement and never signed the Agreement. Under Federal Rule of Civil Procedure 56, a party asserting that a fact is genuinely disputed must support that assertion by citing to particular parts of materials in the record including, inter alia, documents, affidavits or declarations. Fed. R. Civ. P. 56(c)(1)(A). Instead, Plaintiff cites only to the exhibits provided by Defendants, including the screen capture.

Contrary to Plaintiff's unsupported assertions, however, Defendants position is supported by the screen capture and

---

² Plaintiff only attacks the validity of the Agreement on the grounds that he claims to not have reviewed or signed it. Plaintiff makes no arguments that there was a lack of consideration or that the terms of the Agreement were not sufficiently definite. In addition, Plaintiff does not argue that the claims in his Complaint fall outside of the scope of the Agreement or that the Agreement is either procedurally or substantively unconscionable. As such, this Court need not address the portions of the Defendants' moving brief regarding such arguments, which were not raised by the Plaintiff in opposition to the instant motion. Moreover, there is no evidence before this Court that such arguments could be substantiated even if asserted.

10

declaration, drafted under penalty of perjury under 28 U.S.C. § 1746, which explains that the Agreement "course" was created in PeopleSoft on February 3, 2012.  Decl. ¶¶ 3, & 24.  The "start date" heading reflects the date the "course" was created in the system and is not relevant to the date Plaintiff actually reviewed and submitted the Agreement.  April 2, 2012 was the date that the Defendants introduced the Agreement to participating employees.  Id. at ¶¶ 5 & 22.  The screen capture shows that Plaintiff acknowledged and agreed to the terms of the Agreement on April 27, 2012.  Id. at ¶¶ 23-24.  Plaintiff's argument that the dates contained in the screen capture somehow create a dispute of material fact is unfounded.  Instead, the Defendants have made clear what the dates represent.

In addition, the fact that there was no handwritten "signature" required is of no moment.  As stated in Forsyth v. First Trenton Indem. Co., 2010 N.J. Super. Unpub. LEXIS 1183 (App. Div. 2010), a case cited by Plaintiff to this Court, "an actual, handwritten signature is not necessary" and "a party may manifest assent to a contract by clicking a link on a website."  Id. at 17-18.  The Forsyth court also found, in response to a plaintiff's arguments that her click on a hyperlink containing an arbitration agreement "was neither an electronic signature nor

11

consent to a waiver of her rights under the LAD . . . " that "plaintiff assented to the [employment arbitration policy] by clicking the link in paragraph 2 of the . . . email." Id. at 21. As stated in the Kaselitz declaration, and not disputed by Plaintiff, each employee logged into the MPI online portal using a unique "Enterprise ID and Password." Kaselitz Decl. at ¶ 7-8. Therefore, Plaintiff's argument that there was no indication that the employee was the actual individual who clicked the "Yes" box of the Agreement is not supported by the admissible evidence.

    This Court finds the decision in Uddin v. Sears, Roebuck and Co., No. 13-6504, 2014 U.S. Dist. LEXIS 43252 (D.N.J. Mar. 31, 2014), persuasive as it presents nearly identical facts to those presented in the matter sub judice. In Uddin, Sears, a Defendant in this case, presented the identical Agreement to its employees and a plaintiff, Shams Uddin, was required to acknowledge receipt of the Agreement via a link in the MPI Portal. Id. at 5-6. Mr. Uddin, similar to Mr. Ricci, stated that he had no recollection of participating in the information portal and that he did not knowingly give up his right to sue in favor of arbitration. Id. at 13.[3] He also argued that his knowledge of English was limited

---

[3] Notably, the plaintiff in Uddin provided a certification in support his assertions, unlike Mr. Ricci.

and, thus, he didn't comprehend the rights he was relinquishing. The Court, nevertheless, found the Agreement enforceable against the plaintiff stating:

> Here, [p]laintiff essentially asks the Court to create an exception to the objective theory of contract formation based on a party's ignorance. Plaintiff is not claiming fraud. He is not alleging that Sears misrepresented the contents of the Agreement.
>
> * * *
>
> It was [p]laintiff's obligation to ensure that he understood the implications of the Agreement before signing it. See, e.g., Morales [v. Sun Constructors, Inc.], 541 F. 3d [218,] at 223 [(3d Cir. 2008)]. **Plaintiff specifically acknowledged receipt of and assented to the terms of the Agreement by clicking "Yes" and "Submit" on the Agreement's acknowledgment page.** (See Kaselitz Decl., ¶ 23, Exhibit B, page 4-5). Plaintiff is therefore bound by the arbitration clause contained in the Agreement. Morales, 541 F. 3d at 223. Accordingly, this Court holds that Defendant has met its burden of demonstrating that a valid agreement to arbitrate was made.

Id. at 14-15 (emphasis added).

Beyond the self-serving arguments in his brief, Plaintiff has not presented this Court with any admissible evidence sufficient to create a genuine dispute of fact.  Once the moving party points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." Azur v.

13

Chase Bank, USA, 601 F.3d 212, 216 (3d Cir. 2010)(quoting Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir.1999)).  Instead, Plaintiff presents only the arguments in his brief, and his attempts to create discrepancies regarding the dates in the PeopleSoft system, which are undermined by Defendants clear and well-supported explanation.  This Court, therefore, reaches the same conclusion as the Uddin Court; Defendants have presented evidence that Plaintiff reviewed and acknowledged the Agreement and, as such, the Agreement to arbitrate must be enforced.

   Plaintiff has not claimed that any fraud took place, and his unsupported argument that he had no knowledge of the Agreement does not undermine the conclusion that the PeopleSoft system reflects he entered into the Agreement by clicking "Yes" and "Submit."  Kaselitz Decl. at ¶¶ 23-24.  See Uddin, 2014 U.S. Dist. LEXIS at *14-15 (enforcing identical arbitration agreement where Plaintiff was not claiming fraud and stating "[p]laintiff specifically acknowledged receipt of and assented to the terms of the Agreement by clicking "Yes" and "Submit" on the Agreement's acknowledgement page."); see also Morales v. Sun Constructors, Inc., 541 F.3d 218, 221 (3d Cir. 2008)("It will not do for a man to enter into a contract, and, when called upon to respond to its

14

obligations, to say that he did not read it when he signed it, or did not know what it contained.")(quoting Upton v. Tribilcock, 91 U.S. 45, 50 (1875)).

Because the admissible evidence demonstrates that Plaintiff assented to the Agreement, and there is no dispute that the instant lawsuit is within the scope of the Agreement, Defendants' motion to compel arbitration will be granted.

### B. Motion to Dismiss

Defendants have also moved to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(6) stating that the Court of Appeals for the Third Circuit has held that "[i]f all the claims involved in an action are arbitrable, a court may dismiss the action instead of staying it." Seus v. John Nuveen & Co., Inc., 146 F.3d 175, 179 (3d Cir. 1998).  In response, Plaintiff opposes dismissal contending that he did not assent to the Agreement; a contention that this Court has rejected based on the reasons set forth above.[4]

---

[4] Plaintiff's arguments that he has sufficiently pled the elements of his LAD claim is not relevant to whether the matter should be dismissed because the claim has been deemed arbitrable.

15

Because Plaintiff has not requested a stay of this matter pending arbitration and based on considerations of judicial economy, this Court will dismiss this matter without prejudice pending arbitration.  See Shaffer v. Graybill, 68 F. App'x 374, 376 (3d Cir. 2003)("Under the FAA, a court, on application of one of the parties to an agreement to arbitrate, must stay a judicial action commenced in that court which is the subject of an arbitration clause or, in the alternative, must dismiss any arbitrable claims.")(citing 9 U.S.C. §§ 3-4); Uddin, 2014 U.S. Dist. LEXIS 43252 at *24 n.5 (dismissing arbitrable claims where plaintiff had not requested a stay pending arbitration); Hautz Constr. V. H&M Dept. Store, No. 12-3478, 2012 U.S. Dist. LEXIS 166530 at *51-51 (D.N.J. Nov. 20, 2012)(dismissing suit where all claims were arbitrable and no party requested a stay).

**IV.  Conclusion**

For the reasons set forth above, this Court will grant Defendants' motion to compel and to dismiss.  An appropriate Order will issue this date.

                                s/Renée Marie Bumb
                                RENÉE MARIE BUMB
                                United States District Judge

Dated:   January 23, 2015